IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| AARON MATHIS, #131594, | ) | |
| | ) | C/A No. 9:10-2073-MBS-BM |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL MCCALL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

   Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition was filed pro se on August 4, 2010.[1]

The Respondent filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on

December 1, 2010.  As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court

on December 17, 2010, advising Petitioner of the importance of a motion for summary judgment and

of the necessity for him to file an adequate response.  Petitioner was specifically advised that if he

failed to respond adequately, the Respondent's motion may be granted, thereby ending his case.

Petitioner thereafter filed a memorandum in opposition to Respondent's motion for summary

judgment on January 24, 2011.

   This Petition is now before the Court for disposition.[2]

---

   [1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

   [2]This case was automatically referred to the undersigned United States Magistrate Judge for
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local
Rule 19.02(B)(2)(c), D.S.C.  Respondent has filed a motion for summary judgment.  As this is  a
dispositive motion, this Report and Recommendation is entered for review by the Court.



## Procedural History

The Petitioner was indicted in the May 2001 term of the Richland County Grand Jury for Incest [Indictment No. 01-GS-40-1087] and Attempted Criminal Sexual Conduct 2nd Degree with a Minor ("ABWIK") [Indictment No. 02-GS-40-1526]. (R.pp. 648-649, 651-652). The State filed a Notice to seek Life without Parole. (R.p. 7). Petitioner was represented by Lesley Coggiola, Esquire, and Jason King, Esquire, Public Defenders for Richland County. (R.pp. 1-538). On March 4-6, 2002, Petitioner proceeded to trial by jury, which ended in a mistrial on motion by the defense after the prosecutor was unable to establish the chain of custody for some of the blood evidence. (R.p. 242). Petitioner was then retried before a jury on April 29-30, 2002, and was found guilty as charged. (R.pp. 244-538). Petitioner was sentenced to life without parole for attempted criminal sexual conduct, second degree with a minor, and ten (10) years, concurrent, on the incest conviction. (R.p. 536).

Petitioner filed a timely appeal of his conviction, and was represented by Daniel T. Stacey of the South Carolina Office of Appellate Defense. Petitioner raised the following issues on appeal:

1.    Whether the prosecution here was barred by double jeopardy where the prior mistrial was caused by the state's failure to complete the chain of custody of the DNA evidence, after the jury had already heard that it matched the appellant?

2.    Whether the court erred when it permitted the state to introduce prior allegations of sexual advances by appellant against the victim, where the probative value of them was outweighed by prejudice to him?

3.    Whether the court erred when it admitted the legal evidence used to establish the DNA link, where the chain of custody of this evidence was never properly established?

(R.pp. 544).

2



On June 1, 2004, the South Carolina Court of Appeals affirmed the judgment of conviction and sentence. See State v. Mathis, 597 S.E.2d 872 (S.C.Ct.App. 2004). (R.pp. 593-608). Petitioner filed a motion for rehearing,[3] which was denied by the South Carolina Court of Appeals on October 21, 2004. (R.pp. 609-613, 624). The Remittitur was sent down on November 29, 2004. (R.p. 625).

On August 5, 2005, Petitioner filed an Application for Post Conviction Relief ("APCR") in state circuit court and raised the following issues:

Ground One: Ineffective Assistance of Counsel.

Ground Two: Excessive and Inordinate Sentence (LWOP).

Ground Three: Sentence Excess of Statutory Maximum (incest charge).

(R.pp. 626-630). [2005-CP-400-3832].

On August 9, 2005, Petitioner filed a second APCR alleging the same issues raised in the first application. (R.pp. 631-635). [2005-CP-400-3889]. The State filed a motion for merger on October 24, 2005, which was granted on October 26, 2005, and the applications were merged into one action. (R.pp. 642-643, 645-646).

An evidentiary hearing on Petitioner's application was held on April 28, 2008, at which Petitioner was present and represented by Tara D. Shurling, Esquire. (R.pp. 663-736). On July 24, 2008, the PCR judge filed an order denying the Petition in its entirety. (R.pp. 738-751). Petitioner filed a motion to alter or amend on August 7, 2008, which was denied by the PCR Court on November 6, 2008. (R.pp. 770-774, 780).

Petitioner timely filed a notice of appeal with the South Carolina Supreme Court.

---

[3]Robert M. Dudek, Assistant Appellate Defender, represented Petitioner in filing the Petition for Rehearing. (R.pp. 609-613).



Petitioner continued to be represented by Tara Dawn Shurling, and raised the following issues:

1.  Whether the lower court erred in finding that defense counsel was not ineffective for failing to object to the State's expert testifying out of order at the Petitioner's first trial even though the chain of custody on the victim's blood had not been established?

2.  Whether the lower court erred in finding that defense counsel was not ineffective for failing to move for a directed verdict instead of a mistrial at the Petitioner's first trial?

3.  Whether the lower court erred in finding that appellate counsel was not ineffective for failing to advise the Petitioner he could file an appeal with this Court following the South Carolina Court of Appeals' adverse ruling in his direct appeal?

See Petition, p. 2 (See Court Docket No. 19-3).

On June 10, 2010, the South Carolina Supreme Court entered its order denying the Petition in its entirety. See Letter Order filed June 10, 2010 (Court Docket No. 19-6). The Remittitur was sent down on June 29, 2010. See Court Docket No. 19-7.

Petitioner then filed this habeas corpus petition in the United States District Court pursuant to 28 U.S.C. § 2254, raising the following issues:

**Ground One**: Double Jeopardy.

Supporting Facts: After mistrial we felt the next trial would be Double Jeopardy.

**Ground Two**: Evidence of Prior Misconduct.

Supporting Facts: Trial Court Erred in admitting Evidence of prior Bad Acts.

**Ground Three**: Admissibility of DNA Evidence.

Supporting Facts: Chain of Custody never Established.

**Ground Four**: Ineffective Assistance of Counsel.

4



Supporting Facts: Failing to object to Dr's testimony
Failing to move for a direct verdict at March trial

Appellate counsel was ineffective for failing to advise the client of his
right to Appeal to the S.C. Supreme Court.

<u>See</u> Petition, pp. 6-10.

## **Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56, Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11.  Further, while the federal court is charged with liberally construing  pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

## **I.**

In Ground One of his Petition, Petitioner contends that his second trial violated his protection against double jeopardy.  Under the Fifth Amendment to the United States Constitution, a person may not be twice put in jeopardy of life or limb for the same offense.  In general terms, this language has been interpreted to bar prosecution in the following three situations:

1. Where a person would be tried for the same offense after an acquittal;

2. Where a person would be tried for the same offense after a conviction; or



3. Where a person would receive more than one punishment for the same offense.

See Benton v. Maryland, 395 U.S. 784 (1969); North Carolina v. Pearce, 395 U.S. 711 (1969). Jeopardy generally attaches when the jury is sworn and impaneled, unless the defendant consents to the jury's discharge. State v. Baum, 584 S.E.2d 419, 422 (S.C.Ct.App. 2003).

In his direct appeal, Petitioner argued that, although his "motion for mistrial ordinarily removes any barrier to a retrial, the Solicitor's conduct in the present case falls within the exception defined by the United States Supreme Court in Oregon v. Kennedy, 456 U.S. 667 (1982)." Mathis, 597 S.E.2d at 876. Petitioner argued that the State provoked the defense into moving for a mistrial after failing to complete the chain of custody for the victim's blood samples. In rejecting this claim, the South Carolina Court of Appeals held:

> "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." [quoting United States v. Dinitz, 424 U.S. 600, 611 (1976)]

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." Only where the government conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

> . . . .

> We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him



are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

Id. at 673-679 (citations omitted and footnote omitted).

. . . .

Under this standard, the determination depends upon whether prosecutorial misconduct was undertaken with the specific intent "to subvert the protections afforded by the Double Jeopardy Clause." Id. at 676; see also Gilliam v. Foster, 75 F.3d 881 (4th Cir. 1996)[stating that when defendant seeks or consents to grant of mistrial, there is no bar to his later retrial; this proposition is subject to an exception when defendant establishes his request for mistrial was motivated by prosecutorial or judicial misconduct that was intended to provoke defendant into moving for a mistrial].

. . . .

A "court's finding concerning the prosecutor's intent is . . . a factual one which we must accept unless it is clearly erroneous." United States v. Borromeo, 954 F.2d 345, 247 (4th Cir. 1992); see also United States v. Council, 973 F.2d 251, 254 (4th Cir. 1992)["Deference should be given to the trial court in determining whether such an intent existed."]; United States v. Wentz, 800 F.2d 1325, 1327 (4th Cir. 1986)[noting the question of prosecutorial provocation is one of fact on which the findings of the trial court may not be set aside unless clearly erroneous].

. . . .

The Solicitor's neglect did *NOT* rise to the level of "goading" or "provoking" [Petitioner] to move for a mistrial. The evidentiary record does *NOT* reveal any specific intent on the part of the Solicitor "to subvert the protections afforded by the Double Jeopardy Clause." The trial judge ruled: "I've pondered this from the standpoint of trying to determine whether or not this would be prosecutorial misconduct. I don't think it rises to that level . . . .[I]t was nothing intentional on their part." The record is devoid of any evidence of intent by the State to withhold evidence establishing the chain of custody or otherwise prompt the mistrial. Accordingly, although the Solicitor failed to properly prepare the case by establishing a complete chain of custody for the blood evidence, the trial court correctly ruled the retrial was not barred.

Mathis, 397 S.E.2d at 876-878 (emphasis in original).

Substantial deference is to be given to the state court's findings of fact. Evans v.



Smith, 220 F.3d 306, 311-312 (4th Cir.2000), cert. denied,532 U.S. 925 (2001) ["We ... accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir.2000)(en banc), cert. denied,112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir.2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir.2000), cert. denied,533 U.S. 960 (2001). Further, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].

Petitioner has not shown entitlement to relief under this standard.  Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975)[Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].  The issue giving rise to the motion for mistrial was the State's failure to close the chain of custody with regard to the victim's blood (specifically, the drawing of the victim's blood).  Once this issue arose, the Solicitor attempted to close the chain of custody by calling the victim's mother, who purportedly was in the room when the blood was drawn,



back to the stand. (R.pp. 231-232). However, the victim's mother did not see the victim's blood drawn. (R.p. 232). The record also indicates that the State inquired whether the victim's blood was used by the DNA analyst in calculating the statistical likelihood of Petitioner being the father of the fetus. (R.p. 242). After it was determined that the calculation took into account the victim's blood, and removing consideration of the victim's blood would change the likelihood of paternity by 1.1%, the court granted the mistrial. (R.p. 242).

This record does not show an intent by the Solicitor to subvert the protections afforded by the Double Jeopardy Clause. In fact, Petitioner's counsel testified that she thought that the State was surprised when the trial judge raised the issue about the custody not being complete. (R.p. 721). Therefore, Petitioner has not shown that the facts of this case fall into the exception set out in Oregon v. Kennedy, supra, nor has Petitioner shown that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. This issue is without merit and should be dismissed.

## II.

In Ground Two of his Petition, Petitioner contends that the trial court erred in admitting evidence of his prior bad acts of uncharged sexual misconduct committed on the victim three times prior to the Labor Day incident for which he was tried. The record reflects that the three earlier assaults on the victim were all attempted in the same manner and under similar circumstances.



On each occasion, the Petitioner approached the victim while she was alone at family gatherings. He would touch her in largely the same suggestive, inappropriate manner each time, and he would then attempt to entice her to have sex with him. During at least two of the three prior incidents, Petitioner accompanied his improper advances with offers of gifts - just as he did during the incident for which he was charged. Therefore, overall, the three prior incidents show the same illicit conduct with the victim over the course of the nine months prior to the Labor Day incident of September 2000. See Mathis, 597 S.E.2d at 879-880.

Petitioner argued before the South Carolina Court of Appeals that this testimony outweighed the probative value and did not fall within any of the exceptions to the general ban on evidence of an accused's bad acts. However, the South Carolina Court of Appeals found:

> Such evidence is admissible, however, when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the proof of the other; or (5) the identity of the person charged with the present crime. Rule 404(b), SCRE; State v. Lyle, 118 S.E. 803 (S.C. 1923); see also Anderson v. State, 581 S.E.2d 834 (S.C. 2003)[explaining that Rule 404, the modern expression of the Lyle rule, excludes evidence of other crimes, wrongs, or acts offered to prove character of person in order to show action in conformity therewith; the rule creates an exception when testimony is offered to show motive, identity, existence of common scheme or plan, absence of mistake or accident, or intent].
>
> If not the subject of a conviction, a prior bad act must first be established by clear and convincing evidence. [State v. ]Beck, 536 S.E.2d 679, 683 (S.C. 2000). The record must support a logical relevance between the prior bad act and the crime for which the defendant is accused. State v. Braxton, 541 S.E.2d 833 (S.C. 2001). The decision to admit contested evidence is entrusted to the sound discretion of the trial judge. State v. Wilson, 545 S.E.2d 827, 829 (S.C. 2001). "If there is any evidence to support the admission of the evidence, the trial judge's ruling will not be disturbed on appeal." Id. at 829.
>
> In the present case, the trial judge admitted the evidence of [Petitioner's] prior alleged sexual misconduct under the common scheme or plan exception to Rule 404(b), SCRE, and Lyle. . . .

10



In <u>State v. Weaverling</u>, this Court applied the common scheme or plan exception in a case involving allegations of criminal sexual conduct. <u>Id</u>. at 792-793. In that case, the Court found "[t]he common scheme, or plan exception 'is generally applied in cases involving sexual crimes, where evidence of acts prior and subsequent to the act charged in the indictment is held admissible as tending to show <u>continued illicit intercourse</u> between the same parties." <u>Id</u>. at 791 (quoting <u>State v. Whitener</u>, 89 S.E.2d 701, 711 (S.C. 1955)[emphasis added]. In <u>Weaverling</u>, the defendant allegedly sexually abused the same victim in the same manner almost every time the two were together for a period of five or six years. The victim testified that he had been assaulted by the defendant in excess of one hundred times. We held the defendant's pattern of continuous sexual abuse satisfied the common scheme or plan exception. <u>Id</u>. at 792-793.

<u>State v. Tutton</u>, 580 S.E.2d 186 (S.C.Ct.App. 2003), explicates that cases involving criminal sexual conduct often entail the admission of past conduct evidence to show a common scheme or plan . . . .

In the present case, the evidence of alleged prior bad acts reveals a close degree of similarity to the facts of the crime charged. The evidence demonstrates by clear and convincing proof the occurrence of the prior bad acts. The three earlier assaults on the victim were all attempted in the same manner and under similar circumstances. On each occasion, [Petitioner] approached the victim while she was alone at family gatherings. He would touch her in largely the same suggestive, inappropriate manner each time, and he would then attempt to entice her to have sex with him. During at least two of the three prior incidents, [Petitioner] accompanied his improper advances with offers of gifts - just as he did during the incident for which he was charged. Overall, the three prior incidents of sexual misconduct by [Petitioner] show the same illicit conduct with the victim over the course of the nine months prior to September 2000. Concomitantly, we conclude the probative value of the evidence regarding [Petitioner's] prior bad acts clearly outweighs the prejudicial effect of admitting the evidence.

<u>See</u> <u>Mathis</u>, 597 S.E.2d at 879-880.

Petitioner argues that the state court was incorrect in its findings with respect to the admissibility of this evidence under state law. However, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)["federal habeas corpus relief does not lie for errors of state law"]. Further, even if the testimony was inadmissible under state law (which the undersigned does not find), the



Petitioner has not shown he suffered any prejudice as a result of this evidence being admitted; cf State v. Motley, 164 S.E.2d 569, 575 (S.C. 1968)[burden is on defendant to show error in admission of evidence is prejudicial]; as the Petitioner was identified by the victim, and Petitioner's paternity of the fetus was also established by his DNA.

Although Petitioner has not attempted to raise a federal issue with respect to this claim, even if he had, since he did not present this claim in his state proceedings based on federal law; see (R.pp. 550-552); he would be procedurally barred from doing so now. See Levine v. Commissioner, 44 F.3d 121, 124 (2d Cir. 1995)[Where claim was not presented to the state court as a federal claim, it may not be considered on federal habeas corpus review]. Additionally, even assuming for purposes of summary judgement that this issue was properly before this Court based on alleged violations of *federal* law, Petitioner has not shown any such violations, as

> [t]here is no constitutional or other federal legal principle that bars the introduction of evidence of prior bad acts where relevant to proving an element of the crime charged. Indeed, the Federal Rules of Evidence explicitly allow for the introduction of such evidence. See Fed.R.Evid. 404(b). See also Spencer v. Texas, 385 U.S. 554, 560-563 (1967)[upholding state rules requiring that the jury be informed of certain prior bad acts of a defendant]. The Due Process Clause of the Fourteenth Amendment is violated only where the evidence in question "is so extremely unfair that its admission violates fundamental concepts of justice." Dowling v. United States, 493 U.S. 342, 352 (1990)(citations omitted). There can be no unfairness, of course, where the prejudicial evidence is "probative of [an] essential element" in the case. Estelle v. McGuire, 502 U.S. at 69; accord Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1991).

Martinez v. Artuz, No. 99-5744, 2001 WL 540737, at * 8 (S.D.N.Y. May 22, 2001).

Such is the case here. The evidence that Petitioner had previously engaged in the same illicit conduct with the victim over several months prior to the incident for which he was charged, was directly relevant to the State's proof of Plaintiff's common scheme or plan. As previously discussed, the state court determined that the probative value of the evidence regarding



Petitioner's prior bad acts clearly outweighed the prejudicial effect of admitting the evidence. Petitioner has failed to show that the admission of this evidence was so extremely unfair that its admission violated the Fourteenth Amendment; <u>Dowling</u>, 493 U.S. at 352; and on the record before the Court in this case, no federal violation has been shown. <u>See also</u> <u>Evans</u>, 220 F.3d at 312 [Federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. . . . "].

Therefore, this claim is without merit and should be dismissed.

### III.

In Ground Three of his Petition, Petitioner contends that the lower court erred by admitting the DNA evidence where the chain of custody was not properly established. Specifically, Petitioner argues that the chain was incomplete because the whereabouts of the vial of blood taken from the umbilical cord were unknown.

Again, this is an issue of state law. Federal courts must afford states deference in their determinations regarding evidence and procedure; cf <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)["we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted"]; and "[i]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." <u>Estelle</u>, 502 U.S. at 67-68 ["federal habeas corpus relief does not lie for errors of state law"]. Further, even if the state court's admission of this evidence was error under state law, it is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have



no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), <u>cert. denied</u>, 522 U.S. 1109 (1998).

   Hence, admissibility rulings will support the grant of federal habeas relief only when the alleged error infringes upon a specific constitutional right or is so prejudicial that it amounts to the denial of due process. <u>See</u> <u>Turner v. Armontrout</u>, 845 F.2d 165, 169 (8th Cir.), <u>cert.</u> <u>denied</u>, 488 U.S. 928 (1988). Therefore, the issue before this federal court is not whether the trial court erred in admitting this evidence, but whether the admission resulted in a trial so fundamentally unfair as to deny the Petitioner due process of law. <u>Rainer v. Dep't of Corrections</u>, 914 F.2d 1067, 1072 (8th Cir. 1990), <u>cert.</u> <u>denied</u>, 489 U.S. 1099 (1991). The undersigned can find no such violation in the record of this case.

   Defense counsel moved to exclude the DNA evidence based on problems with the chain of custody with regard to a doctor who may have handled the drawing of the victim's blood, and the fact that one vial of blood was apparently missing. (R.pp. 440-441). After satisfying itself as to the chain of custody for the blood samples that were to be admitted, the trial judge upheld the admissibility of the evidence. (R.pp. 443-444). In his direct appeal, Petitioner argued that the chain of custody for the blood samples and fetal tissue was not properly established. However, the South Carolina Court of Appeals disagreed and found:

> In the retrial of the case at bar, the identity of all persons handling the blood samples was clearly established. . . . the State proved a continuous chain of custody through the testimony of all people who had control and possession of the evidence. The persons who handled the evidence testified at trial.
>
> There is no missing link in the chain of custody. The discrepancy in this case only involves a weak link and raises a question of credibility, not admissibility. The trial judge did not err in admitting evidence of the DNA test results.



See Mathis, 597 S.E.2d at 879-880; see also State v. Carter,  544 S.E.2d 835, 838 (S.C. 2001)[Where blood and salvia samples were taken, but the salvia sample was missing, the Court concluded "the evidence of a discrepancy in the contents of the kit does not render the blood sample inadmissible, but goes only to its weight as credible evidence."].

The trial court admitted the DNA evidence and the South Carolina Court of Appeals found that there was no error.  See Rule 6, South Carolina Rules of Criminal Procedure [rules governing proof of chain of custody]; State v. Williams, 376 S.E.2d 773 (S.C. 1989).  Petitioner has failed to present evidence (or indeed, even any argument) sufficient to show that the state court's rejection of this claim amounts to a *federal* violation warranting federal habeas relief.  See also, discussion, infra; Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, 120 S.Ct. 1495 (2000); 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]; Turner, 845 F.2d at 169; Rainer, 914 F.2d at 1072; Smith v. Horn, 120 F.3d at 414.

Therefore, this claim is without merit and should be dismissed.

### IV.

In Ground Four of his Petition, Petitioner contends that his trial counsel was ineffective for failing to object to the testimony of DNA analyst Amber Moss and failing to move for a directed verdict during Petitioner's first trial.  Petitioner also asserts that his appellate counsel was



ineffective for failing to advise Petitioner of his right to file a Petition for Writ of Certiorari to the South Carolina Supreme Court from the Court of Appeals' order denying his direct appeal.

With respect to Petitioner's claim that his counsel was ineffective for failing to object to Moss' testimony and for failing to move for a directed verdict during his first trial, these issues were raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition; Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986); and appealed to the South Carolina Court of Appeals. The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C. Code Ann. § 17-27-80 (1976), as amended. See Mathis v. State of South Carolina, No. 05-CP-40-3832.

After detailing the testimony presented, the PCR judge found that : 1) Petitioner testified that trial counsel did not explain the potential problems with allowing the State's expert to testify before the State had established the chain of custody for the blood and fetus; 2) Petitioner testified that trial counsel should not have consented to a mistrial because the mistake was the State's; 3) Petitioner testified that trial counsel should have objected to the chain of custody for Petitioner's blood that was taken while in prison because the person who drew the blood never testified; 4) Petitioner testified that trial counsel should have questioned the two individuals seated at the kitchen table who would have testified that the Petitioner was asleep on the couch all night; 5) Petitioner also testified that he never met his appellate attorney(s), that the South Carolina Office of Appellate Defense sent everything to his sister, and that his appellate counsel failed to perfect a petition for writ of certiorari to the South Carolina Supreme Court; 6) trial counsel testified she was the Chief Public Defender at the time of Petitioner's trial and subsequent retrial; 7) trial counsel testified that [during the first trial] she agreed to the State's request that the DNA expert (who had to fly in from Texas)



be allowed to testify before the chain of custody was established for the blood and tissue samples used in the DNA analysis; 8) trial counsel testified that later, after the State's chain witnesses testified, it appeared the chain of custody for the Mother's [victim's] blood was incomplete (there was no witness who testified to seeing the Mother's blood drawn and placed with the investigator); 9) trial counsel testified that the trial judge brought up the chain issue and continued the case until the next day to allow the State to close the chain; 10) trial counsel testified that she found herself in a tough situation because the victim had testified and therefore a directed verdict motion would not have been successful; 11) trial counsel testified that, in her opinion, a limiting instruction would have been inadequate and that she ultimately agreed (with co-counsel) to move for a mistrial; 12) trial counsel testified that the State never requested that Petitioner waive the chain of custody; 13) trial counsel testified that she saw no problems with the chain of custody of the Petitioner's blood sample; 14) regarding the potential witnesses, trial counsel testified that she recalled talking to some potential witnesses, and that her paralegal also did, but that the witnesses would not have been beneficial; 15) trial counsel testified that any errors with the DNA testimony were critical because the DNA testimony was critical; 16) trial counsel testified that the decision regarding the mistrial was tough, but it was made after discussing it with co-counsel on several occasions; 17) Petitioner's testimony was not credible; 18) counsel's testimony was credible; 19) with regard to Petitioner's allegations of ineffective assistance of counsel concerning the chain of custody of the Petitioner's blood evidence, Petitioner's claims were completely without merit; 20) the appellate court ruled on this issue, i.e. there were no missing links in the chain of custody; 21) there was no merit to the allegations that appellate counsel was ineffective regarding a petition for writ of certiorari to the South Carolina Supreme Court after the direct appeal was unsuccessful in the Court of Appeals; 22)



regarding trial counsel's consent to allowing the DNA expert to testify before the chain of evidence was established, the Court found no merit to the Petitioner's allegations of ineffectiveness; 23) that consenting to such a request is not extraordinary and was done so only after receiving assurances that the chain was solid, accordingly the first prong of Strickland v. Washington, 466 U.S. 668 (1984) was not met because such civility is not unreasonable under the prevailing professional norms; 24) in addition, any harm to the Petitioner regarding the consent was not prejudicial when also considering the State's neglect regarding the chain was not intentional; 25) regarding the chain of custody issue and the related mistrial ruling, Petitioner's claims were without merit; 26) there were three samples received by the DNA expert: the fetus, the Petitioner's blood, and the victim's blood; 27) the record was clear that the chain was fully established regarding the fetus and the Petitioner's blood; 28) there was no dispute whatsoever that the victim was the mother of the fetus; 29) the testimony was uncontested that the fetus was excised from the victim after undergoing a late term abortion at a clinic in Atlanta (as a result of the incestuous statutory rape); 30) the chain was solid as to the fetus; accordingly, any DNA analysis regarding who the fetus' mother was would have been merely cumulative; 31) the DNA expert's testimony was only for the purpose of establishing who the father of the fetus might be [paternity test]; 32) the chain of custody for the fetus and the Petitioner's blood was entirely intact and any DNA analysis concerning the fetus and the Petitioner's blood was sound (it was only the victim's blood for which the chain was not completed); 33) the relevant issue with the DNA expert's testimony concerning paternity was whether the victim's blood was a basis of that analysis, and if so, whether any error concerning the inclusion of the victim's blood into the paternity results was prejudicial to the Petitioner; i.e., there was a reasonable likelihood that the results of the trial(s) would have been different (via a motion for a directed verdict, or mistrial, or curative



instruction), <u>Strickland</u>; 34) there were differences in the DNA expert's testimony in the first trial versus the second; 35) at the first trial, the expert testified that alleles from the fetus matched the victim and the Petitioner; 36) the expert testified that the paternity index was calculated for each allele the father (Petitioner ) would have contributed and then a cumulative paternity index was calculated based on each of the alleles that the father would have contributed using the genetic profiles from the lab's database for the statistical calculations; 37) any erroneous use of the Petitioner's genetic profile in the calculations concerning the expert's opinion had to the paternity of the fetus was not prejudicial; 38) most, if not all, of the DNA expert's testimony was to establish paternity and the testimony was related to an analysis of the fetus and the Petitioner's genetic materials, not necessarily including the victim's; 39) the DNA expert testified that the calculated "paternity index" indicates that the Petitioner was 1,252,078 times more likely to be the father of the fetal sample as a randomly tested individual; 40) after a through review of the DNA expert's testimony, during the first trial, the Court found that the testimony revealed that the "paternity index" was calculated without the use of the victim's blood; 41) on the contrary, the DNA expert testified that Petitioner could not be excluded as the father of the fetal sample and the "probability of paternity" was 99.99% as compared to an untested random number of North American population; 42) the exact components used to calculate the "probability of paternity" were not clearly defined by the DNA expert's testimony and the Court could not exclude the possibility that the victim's blood was a component of the calculation of the "probability of paternity"; 43) the relevant question was whether the lack of a chain of custody for the victim's blood effected the "probability of paternity" calculations because the victim's blood could no longer be used as a component, and the effect on the "probability of paternity" calculations was such that a reasonable  probability existed that the



outcome of the Petitioner's trial would have been different if trial counsel had not proceeded with

a mistrial; 44) any such effect on the calculation(s) of the "probability of paternity" would not amount

to a difference giving rise to a reasonable probability that the outcome of the Petitioner's trial would

be different if the mistrial had not occurred and the first trial was completed; 45) the Court's

conclusion that the Petitioner was not prejudiced was based on the fact that the "paternity index"

remained intact whether the victim's blood was properly admitted or not, and the "paternity index"

was, according to the testimony of the DNA expert during the first trial, calculated using only the

Petitioner and fetal samples, not the victim's; 46) considering that the victim's blood was relatively

unimportant for purposes of the expert's complete testimony regarding paternity, and the fact that no

corroboration whatsoever of the victim's testimony was even necessary, there was no merit to any

allegations that a reasonable probability exists that the outcome of the Petitioner's trial(s) [guilty]

would have been different if trial counsel had instead of a mistrial pursued a directed verdict or

continued with the first trial; 47) Petitioner did not establish any constitutional violations or

deprivations that would require the court to grant his application; and 48) except as provided herein,

Petitioner failed to raise any remaining allegations and therefore waived those claims.  (R.pp. 742-

750).

       As previously noted, substantial deference is to be given to the state court's findings

of fact.  Evans, 220 F.3d at 311-312;  Bell v. Jarvis, supra; 28 U.S.C. § 2254(e)(1).  See also Fisher,

215 F.3d at  446; Frye, 235 F.3d at 900.  However, although the state court findings as to historical

facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question

of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an

independent conclusion.  Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson,



996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495. Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claim.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable



probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell, 88 F.3d at 269.

Here, after careful review of the Petition and the record presented to this Court, the undersigned finds and concludes that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard.  Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

**(A)**

**Claim that trial counsel was ineffective for failing to object to the testimony of DNA analyst Amber Moss during Petitioner's first trial.**

At the PCR hearing, trial counsel testified that she consented to Moss' testimony after the State had indicated there were scheduling/logistical issues and the DNA expert need to go first. (R.p. 701).  Counsel testified that she works with solicitors all the time when they have scheduling problems and gave the example of if a witness is in a class for example and they want to bring them in tomorrow.  (R.p. 722).  Counsel also testified that while it was not commonplace for a state expert to be allowed to testify out of order, it was also not rare.  (R.p. 722).  The PCR court found that consenting to such a request was not extraordinary and that "such civility is not unreasonable under the prevailing professional norms."  (R.p. 746).  The PCR court also found that any harm to the Petitioner regarding the consent was not prejudicial when also considering that the State's neglect regarding the chain was not intentional.  See discussion, supra.  The South Carolina Supreme Court denied Petitioner's writ of certiorari (which also included this issue) in its entirety.  See Letter Order filed June 10, 2010 (Court Docket No. 19-6).

As previously discussed, since Petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the South Carolina state court, which found no indication of ineffective



22

assistance in this evidence. This Court's review is limited by the deferential standard of review set forth in §2254(d)(1), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, <u>supra</u>. <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see also</u> <u>Fisher</u>, 215 F.3d at 446; and there is no basis in this record to overturn the findings of the State Court. <u>Evans</u>, 220 F.3d at 312. Further, even assuming arguendo that counsel's performance was deficient for allowing the State's witness to testify out of order, Petitioner has also failed to show that the outcome of his trial would have been different if his counsel had not done so. The victim's blood was not a major component of the expert's testimony during the first trial. <u>See</u> (R.pp. 156, 242, 747). The PCR court found that the relevant question was whether the lack of a chain of custody for the victim's blood effected the "probability of paternity" calculations because the victim's blood could no longer be used as a component, and the effect on the "probability of paternity" calculations was such that a reasonable probability existed that the outcome of the Petitioner's trial would have been different if trial counsel had not proceeded with a mistrial. The PCR court then found that any such effect on the calculation(s) of the "probability of paternity" would not amount to a difference giving rise to a reasonable probability that the outcome of Petitioner's trial would have been different if the mistrial had not occurred and the first trial was completed. <u>See</u> <u>also</u>, (R.p. 242).

        The PCR court's conclusion that the Petitioner was not prejudiced is based on the fact that the "paternity index" remains intact whether the victim's blood is properly admitted or not, and the "paternity index" was, according to the testimony of the DNA expert during the first trial, calculated as a match even using only the Petitioner and fetal samples. (R.p. 156). Petitioner has not shown that these findings are unreasonable. Nor has Petitioner shown that the state court's rejection of this claim was unreasonable. <u>Evans</u>, 220 F.3d at 312 [Federal habeas relief will not be granted on



a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].

Petitioner's claim that his counsel was ineffective on this ground is without merit, and should be dismissed. Fisher, 215 F.3d at 446-447 [Court reviewed petitioner's ineffective assistance of counsel claims under the standards set forth in 28 U.S.C. § 2254(d)].

**(B)**

**Claim that trial counsel was ineffective for failing to move for a directed verdict in Petitioner's first trial (rather than a mistrial).**

Petitioner also contends that his counsel was ineffective during his first trial for failing to move for a directed verdict (rather than a mistrial) after the chain of custody for the DNA was not established. The PCR court did not rule on this issue in its order filed on July 24, 2008. (R.pp. 738-751). However, Petitioner filed a motion to alter or amend on August 7, 2008; (R.pp. 770-774); and in his motion to alter or amend, Petitioner asserted that the Court had not addressed his argument that had defense counsel moved to strike the testimony concerning the DNA, there was a reasonable probability that a directed verdict motion would have been granted. Petitioner argued that the victim's identification of him as the assailant was not enough to warrant the case going to the jury without the paternity of the fetus. (R.p. 771). The PCR court filed its order denying the motion to alter or amend on November 6, 2008; (R.p. 780); following which Petitioner also raised this issue in his petition for certiorari to the South Carolina Supreme Court, which was denied. See Letter Order filed June 10, 2010 (Court Docket No. 19-6). Based on this record, the Respondent has not

24

contested exhaustion of this issue for purpose of this federal habeas petition.

Since this ineffective assistance of counsel claim was adjudicated on the merits by the South Carolina state court, this Court's review is again limited by the deferential standard of review set forth in §2254(d)(1), as interpreted by the Supreme Court in Williams v. Taylor, supra. See Bell v. Jarvis, supra; see also Fisher, 215 F.3d at 446; Evans, 220 F.3d at 312. The state court found no indication of ineffective assistance in this evidence, and there is no basis in this record to overturn the findings of the State Court. Evans, 220 F.3d at 312. Petitioner has not shown that his counsel was ineffective for failing to move for a directed verdict, as a directed verdict is appropriate only when the prosecution presents no evidence whatsoever of one or more elements of the charged offense. State v. McCluney, 606 S.E.2d 485, 486 (S.C. 2004); State v. McLauren, 563 S.E.2d 346, 351 (S.C. 2002). The sufficiency of the evidence may not be weighed by the trial court. McLauren, 563 S.E.2d at 251. Therefore, if any evidence of the charged offense has been presented, the case will survive a motion for a directed verdict.

Further, Petitioner has also failed to show that the outcome of his trial would have been different if his counsel had filed a motion for a directed verdict. Both of Petitioner's trial counsel indicated that there was no basis for a directed verdict in Petitioner's first trial. (R.pp. 266, 702). The victim had testified and there was enough to go to the jury. (R.pp. 80-109, 702). The same PCR appeal issue was also raised to the South Carolina Supreme Court, on which certiorari was denied. Based upon a review of the facts and the state court proceedings, Petitioner has failed to show that the outcome of his trial would have been different if his counsel had made a motion for a directed verdict. Petitioner's arguments to the contrary are mere speculation and conjecture. Nor has Petitioner shown that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at

25



312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].

Petitioner's claim that his counsel was ineffective on this ground is without merit, and should be dismissed. Fisher, 215 F.3d at 446-447 [Court reviewed petitioner's ineffective assistance of counsel claims under the standards set forth in 28 U.S.C. § 2254(d)].

**(C)**

**Claim that Appellate counsel was ineffective for failing to advise Petitioner regarding his right to file a writ of certiorari to the South Carolina Supreme Court after he was unsuccessful at the Court of Appeals.**

Although Petitioner contends that his counsel was ineffective in failing to advise him of the right to file a writ of certiorari to the South Carolina Supreme Court after he was unsuccessful at the state Court of Appeals, there is no duty for appellate counsel to file a petition for rehearing or certiorari from a decision of the Court of Appeals in a criminal matter. See Douglas v. State, 631 S.E.2d 542 (S.C. 2006)[there is no right to effective assistance of counsel when seeking discretionary review]. In fact, Petitioner concedes that "[a]ppellate counsel cannot be found ineffective for failing to pursue a petition for writ of certiorari in the Supreme Court following a decision of the Court of Appeals." See Petitioner's Memorandum in Opposition, pp. 14-15.

Petitioner distinguishes his issue as being the right to be "advised" of his right to file a petition of certiorari from the Court of Appeals' decision, citing to Austin v. State, 409 S.E.2d 395 (S.C. 1991). However, in Austin the Court was faced with an entirely different scenario which

26

involved the granting of a belated appellate review of Petitioner's PCR decision (where there had been no appellate review). In this case, Petitioner had appellate review of his case by the South Carolina Court of Appeals. Petitioner has not shown a federal violation for his counsel failing to advise him that he had a right to a discretionary appeal after the South Carolina Court of Appeals affirmed his convictions and sentences. Cf. Douglas v. State, supra. Nor has Petitioner shown that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].

Consequently, Petitioner's claim that his counsel was ineffective on this ground is without merit, and should be dismissed. Fisher, 215 F.3d at 446-447 [Court reviewed petitioner's ineffective assistance of counsel claims under the standards set forth in 28 U.S.C. § 2254(d)].

### Conclusion

Based on the foregoing, it is recommended that Respondent's motion for summary judgment be **granted**, and that this Petition be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
 Bristow Marchant
 United States Magistrate Judge

June 15, 2011
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

